UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FIRST MERCURY INSURANCE COMPANY,

            Plaintiff,

    v.

KINSALE INSURANCE COMPANY, KLEIN PLASTERING, INC., and THOMPSON BROOKS, INC.

         Defendants.

Case No. 18-cv-00071-SI

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 42

Plaintiff First Mercury Insurance Company ("First Mercury") has filed a motion for summary judgment. Dkt. No. 42 ("Mot."). The Court held a hearing on August 17, 2018. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion.

## BACKGROUND

This declaratory relief action arises from an underlying case filed in July 2016, entitled *Alex Slusky, Danna Slusky, 3730 Washington Trust and Lawrence Sussman, Trustee v. Thompson Brooks, Inc. v. Klein Plastering, Inc.* ("Underlying Action"). Roberto Decl., Ex. 7. In the Underlying Action, the Sluskys sought damages for construction defects stemming from the renovation of their large San Francisco residence. The alleged construction defects included "a black, viscous substance oozing from various window and door assemblies" and "oxidation (i.e., rusting) and discoloration of the stucco that had been applied on the Home by Klein Plastering and the paint that had been applied to the stucco by TBI [Thompson Brooks, Inc.]." Mot. at 7-8 (citing Roberto Decl., Ex. 6 ("Slusky Depo.") at 47:6-15, 55:18-25; Roberto Decl., Ex. 8 ("Azadeh

Depo.") at 97:7-24). The renovation of the home was completed in December 2011, and the Sluskys moved into the home in January 2012. Slusky Depo. at 30:5-7, 38:25-39:6.

First Mercury filed this lawsuit seeking declaratory relief concerning its duty to defend and indemnify Klein Plastering, Inc. and Thompson Brooks, Inc. ("TBI") under commercial general liability ("CGL") policies that First Mercury issued to Klein Plastering from November 1, 2009, to November 1, 2014. The defendants in this case are Klein Plastering, the subcontractor that performed the stucco work on the Slusky home; TBI, the general contractor hired to perform the renovations on the home and that painted the stucco Klein Plastering installed; and Kinsale Insurance Company ("Kinsale"), the insurance company that issued commercial general liability policies to Klein Plastering after First Mercury did, from November 1, 2014, to November 1, 2017.

The Underlying Action went to arbitration, initially against TBI alone, on the basis of the black viscous substance that appeared in the home between the first and second year after the Sluskys moved in. *See id.* at 47:6-13.[1] On June 30, 2017, the Sluskys updated their statement of claim and summary of damages to include the cost of remediating the stucco on the home. Roberto Decl., Ex. 9 ("Updated Statement of Claim").[2] TBI then initiated an arbitration demand against Klein Plastering that was consolidated into the Underlying Action. *See* Roberto Decl., Ex. 10. First Mercury and Kinsale represented Klein Plastering subject to a complete reservation of rights. Hayman Decl., Ex. 6; Roberto Decl., Ex. 17. First Mercury denied TBI's request for a defense as an additional insured under Klein Plastering's policy. Hayman Decl., Ex. 8.

---

[1] Kinsale objects to First Mercury's use of the deposition transcripts of Alex Slusky and Majid Azadeh as not properly authenticated because First Mercury failed to include the court reporter's certification. Dkt. No. 52. First Mercury corrects this omission in its reply brief, and the Court therefore OVERRULES Kinsale's objection. *See* Dkt. No. 56.

[2] The Court GRANTS First Mercury's unopposed request for judicial notice of various deposition transcripts, agreements made in connection with the Sluskys' renovation project, and documents filed in the arbitration of the Underlying Action. The Court takes judicial notice of these documents only to the extent the facts they contain are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). The Court does not take judicial notice of any disputed facts contained within these documents.

Following several days of evidentiary hearings, on February 26, 2018, the arbitrator issued an Interim Award. Roberto Decl., Ex. 15. The arbitrator found that, although "[t]he top coat of stucco was to be at least 1/8 inch thick[,]" certain areas were not covered with the requisite thickness. *Id.* at 3. Without this protection, chlorides in the marine air at the site of the home "became acidic and penetrated to the metal [in the stucco] and caused it to corrode." *Id.* The arbitrator further found that "[t]he weight of the evidence is that to properly repair the stucco system those areas installed by Klein should be removed and re-installed with the proper embedment of lath and thickness of top coat." *Id.* The arbitrator held TBI liable to the Sluskys for breach of contract damages totaling $2,065,841, and held Klein Plastering liable to indemnify TBI for $593,566 as damages for breach of contract.[3] *Id.* at 8. On April 9, 2018, the arbitrator issued a final award that incorporated the Interim Arbitration Award. Roberto Decl., Ex. 16. TBI filed a petition in San Francisco County Superior Court to confirm the Interim and Final Arbitration Awards. Roberto Decl., Ex. 18. A hearing on the petition was held on July 27, 2018.

First Mercury filed this declaratory relief action on January 4, 2018. Dkt. No. 1. Before all parties had answered, the parties filed a stipulation for First Mercury to file a first amended complaint. Dkt. No. 28. The Court granted the stipulation on May 15, 2018. Dkt. No. 33. Defendants filed their answers to the first amended complaint, and Klein Plastering filed a counter-claim against Kinsale. Dkt. Nos. 36, 37, 38.

At the initial case management conference, the parties agreed to go to private mediation and later agreed to a mediation date of July 18, 2018. Dkt. Nos. 31, 35. On June 29, 2018, the parties jointly moved to vacate the deadline to complete mediation, stating that TBI recently informed the parties that it planned to liquidate its assets and file for dissolution. Dkt. No. 40. Thus, the parties stated that a global resolution of the case was unlikely and that the parties would discuss mediation with the Court at the next status conference. A further case management conference is set for September 14, 2018. As of the filing of the opposition briefs, initial

---

[3] The arbitrator also found TBI and Klein Plastering liable for pre-award interest, attorneys' fees and costs, and arbitration costs.

disclosures under Federal Rule of Civil Procedure 26 had not yet been exchanged, pursuant to an agreement put in place when the parties anticipated going to early private mediation. Counsel for Kinsale has filed a declaration that TBI's counsel advised that TBI's insurers may substitute into this action to pursue its subrogation rights. Halman Decl. ¶ 15.

On July 12, 2018, First Mercury filed the present motion for summary judgment. First Mercury seeks three declarations:

> (1) "that the cost of repairing the defective stucco work performed by Klein Plastering is excluded from coverage under the 'damage to your work' exclusion in the policies issued by First Mercury" (under Exclusion *l*, also known as the "business risk" exclusion);

> (2) "that any third party consequential damage that might be considered outside the business risk exclusions, e.g.[,] potentially the discoloration to surface paint applied to the stucco by TBI, is not within the scope of coverage because this property damage did not occur during the First Mercury policy periods[;]" and

> (3) that First Mercury owes no duty to defend or indemnify TBI because "[t]he only additional insured coverage provided to TBI was limited to damage that occurred during ongoing operations" and "the arbitration demand alleges that the discoloration to this surface paint occurred in late 2016 or 2017[.]"

Mot. at 1-2.

All defendants filed oppositions to the motion for summary judgment. Klein Plastering asks that the Court deny the motion with regards to requests 1 and 2, or, alternatively, defer ruling on the motion until the parties have obtained further discovery, pursuant to Federal Rule of Civil Procedure 56(d). Dkt. No. 48 ("Klein Plastering Opp'n"). Kinsale does not oppose request 1 but asks that the Court continue the motion on the issue while Kinsale prepares its own motion for summary judgment regarding the same exclusion.[4] Dkt. No. 51 ("Kinsale Opp'n") at 2. Kinsale opposes First Mercury's request 2, and asks that the Court deny the motion or, alternatively, defer ruling in order to allow Kinsale to conduct discovery. TBI's opposition addresses only request 3,

---

[4] Kinsale also notes that, although Kinsale is a defendant in this lawsuit, First Mercury presently seeks summary judgment only against Klein Plastering and TBI. *See* Not. of Mot. at 1.

as it relates to First Mercury's duty to defend or indemnify TBI. Dkt. No. 50 ("TBI Opp'n"). Klein Plastering and Kinsale do not substantively address request 3 in their oppositions. Klein Plastering Opp'n at 1 n.1; Kinsale Opp'n at 1 n.1.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(4).

United States District Court
Northern District of California

All parties agree that in this action based on diversity jurisdiction, the substantive law of the state of California applies. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## DISCUSSION

**I.** **Whether Repairs to Klein Plastering's Stucco Work Are Excluded Under the "Damage to Your Work" Exclusion (Exclusion *l*)**

First Mercury contends that it does not have a duty to indemnify Klein Plastering in the Underlying Action because the damages attributed to Klein Plastering for the cost of repairing the stucco work are excluded from coverage under Exclusion *l*, the "damage to your work" exclusion. Klein Plastering argues that First Mercury concedes the cost of repainting the stucco does not fall within Exclusion *l*, that the Underlying Action did not parse out the cost of repairing the stucco from the cost of repainting it, and thus there are factual questions as to the extent of First Mercury's coverage. Klein Plastering Opp'n at 6-7. Kinsale does not oppose First Mercury's request for a declaration on this point but asks that the Court continue the hearing on this issue by sixty days so that Kinsale may prepare its own motion for summary judgment on the same exclusion. Kinsale Opp'n at 2.

In California, "common practice" with general liability policies such as the one at issue here is "to cover a broad risk at the beginning of the policy but to shift certain risks back to the insurance buyer by means of exclusions stated later." *See Maryland Casualty Co. v. Reeder*, 221 Cal. App. 3d 961, 968 (1990) (citation omitted). These policies "are not designed to provide contractors and developers with coverage against claims their work is inferior or defective." *Id.* at 967 (citation omitted). "Rather, liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products." *Id.* If it were otherwise, the insured would have less incentive to take care in its own workmanship, being able to pass the cost of replacement and repair on to its insurer. *Id.*

Here, the policy First Mercury issued to Klein Plastering embodies these principles. The relevant policy language is as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period. . . .

**2. Exclusions**

This insurance does not apply to: . . .

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." . . .

**SECTION V – DEFINITIONS**

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

7

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. . . .

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**21.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations. . . .

Hayman Decl., Ex. 1 ("Policy") at 6, 9, 17-18.[5]

Exclusion *l* denies coverage for "damage to your work," and Klein Plastering does not contest that the damages attributable to Klein Plastering's own defective stucco installation are thus excluded from coverage. The dispute here is over whether the policy also excludes coverage for the damage to the surface paint, which TBI applied over the stucco.[6]

---

[5] The quoted language is drawn from Commercial General Liability Policy No. FMWA000866, effective from November 1, 2009, to November 1, 2010. Hayman Decl., Ex. 1. The quoted language substantially mirrors that found in the subsequent policies First Mercury issued. *See id.*, Ex. 2-5. Page citations in the Policy are to the ECF-generated page numbers.

[6] In the Underlying Action, experts for multiple sides testified that the oxidation of the surface paint was caused by the underlying corrosion of the defective stucco. None of the parties dispute the accuracy of this conclusion.

In *CalFarm Insurance Company v. Krusiewicz*, the California Court of Appeal considered a policy that, as here, "provided coverage for damages to the work product of others caused by the insured, but excluded coverage for damages to the work product of the insured and for the costs of repairing the insured's defective work." 131 Cal. App. 273, 278 (2005). There, the insured contractor failed to apply three coats of sealant to the back of retaining walls, thus leading to water seepage and eventual damage to the exterior paint job (applied by another contractor) on the retaining walls. The appeals court found that the cost of removing the damaged paint and repainting the walls was covered under the policy, but that the cost of repairing the walls themselves was excluded. *Id.* at 290; *see also Am. Home Assurance Co. v. SMG Stone Co.*, 119 F. Supp. 3d 1053, 1064 (N.D. Cal. 2015) (Gilliam, J.) (finding on summary judgment that Exclusion *l* excluded from coverage "costs incurred to remediate an insured's defective construction work," and thus the cost of removing and replacing drywall and subflooring installed by other subcontractors during the remediation of faulty floor tiling was to be borne by the insured subcontractor that laid the tiling).

Similar to *Krusiewicz*, the insured's defectively installed stucco here damaged TBI's paint job when the corner beads and metal lath under the stucco corroded. The policy First Mercury issued covers "property damage," defined as "[p]hysical injury to tangible property," caused by an "occurrence," or "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at 6, 17-18. First Mercury all but concedes that the damage to the surface paint is not subject to Exclusion *l*. *See, e.g.,* Mot. at 1-2 ("any third party consequential damage that might be considered outside [Exclusion *l*]" would "potentially" include "the discoloration to surface paint applied to the stucco by TBI."). First Mercury never argues that the paint damage is excluded from coverage under Exclusion *l*, but rather, in its second request for relief, seeks a declaration that the paint damage is not covered because of the time period in which that damage occurred.

The Court concludes that the declaration First Mercury seeks is overbroad under the facts of this case. In its request for a declaration, First Mercury asks that the Court declare the entire cost attributed to Klein Plastering in the Underlying Action (i.e., the $593,566) is excluded by

Exclusion *l*. *See id.* at 14. Yet as First Mercury notes, the arbitration award "does not parse out or otherwise identify the amount of damages awarded to repaint the exterior of the stucco." *See id.* at 9. Thus, if the damage amount for which Klein Plastering was found liable in the Underlying Action is comprised of both the cost of replacing the stucco work and also of then repainting it, and if the former is excluded under Exclusion *l* but the latter potentially is not, then the Court cannot grant in full the declaration that First Mercury seeks.

Because the parties do not dispute that the damage to Klein Plastering's stucco work itself is excluded under Exclusion *l*, the Court will GRANT IN PART First Mercury's motion for a declaration on this point. However, the Court DENIES First Mercury's motion to the extent it seeks a declaration that the damage to the surface paint is excluded from coverage under the "damage to your work" exclusion in the policies issued by First Mercury (Exclusion *l*). This ruling is without prejudice to Kinsale filing its own motion for summary judgment on this issue in the future.

## II.     Whether Damage That Is Not "Damage to Your Work" Occurred Outside the Policy Period

First Mercury next seeks a declaration "that any third party consequential damage that might be considered outside the business risk exclusions, e.g.[,] potentially the discoloration to surface paint applied to the stucco by TBI, is not within the scope of coverage because this property damage did not occur during the First Mercury policy periods." Mot. at 1-2. First Mercury argues that "[t]he paint damage was both alleged and proven to have occurred in late 2016 or early 2017" and so, because First Mercury's policy period ended in November 2014, damage to the paint is not covered. *Id.* at 15-17. Klein Plastering and Kinsale oppose this request on the grounds that there are questions of material fact regarding when the damage to the surface paint occurred.

The CGL here covers "property damage" that "occurs during the policy period." Policy at 6. The California Supreme Court has explained that where the damage at issue is alleged to be a continuous and progressive injury, the date of discovery of the damage or injury is not controlling.

"It is only the *effect* -- the occurrence of bodily injury or property damage during the policy period, resulting from a sudden accidental event or the 'continuous or repeated exposure to conditions' -- that triggers potential liability coverage." *Montrose Chem. Corp. v. Super. Ct.*, 10 Cal. 4th 645, 675 (1995) ("*Montrose II*"); *see also Pepperell v. Scottsdale Ins. Co.*, 62 Cal. App. 4th 1045, 1053 (1998) ("continuing or progressive property damage is deemed to occur over the entire process of the continuing injury"). Absent policy language to the contrary, all insurers with policies in effect during the period of continuous or progressive deterioration are obligated to provide coverage. *See Montrose II*, 10 Cal. 4th at 689.

In *Pepperell*, the California Court of Appeal found the insurer owed a duty to defend and reversed the trial court's grant of summary judgment in the insurer's favor. There, the insured developer completed construction on a home in November 1988; in March 1991, construction defects in the home led to severe leakage. *Pepperell*, 62 Cal. App. 4th at 1047. The CGL policy with the defendant insurer was in effect from May 1988 to May 1989. *Id.* at 1048-49. The insurer argued the property damage was not covered because it occurred outside of the policy period. Citing extensively to *Montrose II*, the court rejected this argument because it "rest[ed] on the invalid proposition that the damage must be *manifested* within the policy period." *Id.* at 1051-52. As in *Montrose II*, the *Pepperell* court did not reach the merits of whether the insurer's policy provided coverage for the damage at issue: "Whether the damages and injuries alleged were in fact 'continuous' is itself a matter for final determination by the trier of fact." *Pepperell* at 1056 (quoting *Montrose II*, 10 Cal. 4th at 694).

Similarly here, although First Mercury agrees with defendants that *Montrose II* applies, the argument it makes in favor of summary judgment is essentially the argument the *Pepperell* court rejected, that the insured is not covered because damage did not manifest within the policy period. First Mercury asserts, without citation, that "[p]aint discoloration, unlike, for example, structural damage to a home, is not a latent defect. Consequently, the date on which the paint discoloration was first observed is at least presumptively the date of occurrence absent the presentation of evidence to the contrary." Reply at 6 n.1. First Mercury moves for summary judgment on the basis of testimony in the Underlying Action from Alex Slusky and Majid Azadeh, the Sluskys'

11

expert, stating that they first noticed the discoloration to the surface paint in late 2016 or early 2017. Alex Slusky testified at his deposition on December 6, 2017, that he or someone else in his family first observed the failing of the stucco "[e]arly this year." Slusky Depo. at 55:18-24. Azadeh testified that he had been retained by the Sluskys in September 2015 and that his office "had not observed any noticeable corrosion or related staining of the stucco assemblies" prior to a site visit on February 14, 2017. Azadeh Depo. at 97:7-24, 102:3-7.[7]

The Court has before it no undisputed facts regarding when the damage to the surface paint occurred or how that information will be determined. First Mercury's argument rests on the assumption that the Sluskys observed the paint discoloration at the same time when it first occurred. But there remains the possibility that the paint discoloration occurred earlier. As with "improper piling of dirt against [a] building" that results in dry rot damage or a crack in a swimming pool that eventually leads to leakage, it is possible that here the occurrence of the paint damage began far earlier than when the Sluskys first observed it. *See Pepperell*, 62 Cal. App. 4th at 1053 (citing examples analyzed in *Montrose II*). The precise date of the paint discoloration was not at issue in the Underlying Action. Moreover, discovery in this lawsuit had not begun when First Mercury filed its motion, and several of the defendants have indicated their intent to file their own motions for summary judgment. The Court agrees with defendants that First Mercury's motion is premature. In relying solely on the deposition testimony in the Underlying Action, at least those portions that have been provided to the Court for this motion, First Mercury has failed to show there is no genuine issue of fact regarding when the discoloration of the surface paint first occurred.[8]

---

[7] First Mercury also relies on the Sluskys' June 2017 Updated Statement of Claim in the Underlying Action, which alleged that "[s]ubsequent investigation revealed that the Sluskys had first observed the discoloration in late 2016, but initially mistook it for a localized exterior paint issue manifesting itself at a few locations around the property, rather than a more serious stucco product incompatibility." Updated Statement of Claim at 5. This is the only reference in the record to a late 2016 occurrence date, and the Court will not take judicial notice of disputed facts within the statement of claim. *See* n.2, *supra*.

[8] Conceivably, one way in which First Mercury could have shown when the paint discoloration occurred would have been to show when the corrosion of the underlying stucco

Accordingly, the Court DENIES First Mercury's request for a declaration that the damage to the surface paint is excluded from coverage based on occurrence outside the First Mercury policy periods.

**III.     Whether First Mercury Owes a Duty to Defend or Indemnify TBI as an Additional Insured**

Finally, First Mercury seeks a declaration that it has no duty to defend or indemnify TBI as an additional insured because TBI's additional insured coverage "was limited to damage that occurred during ongoing operations," and that the Underlying Action alleges that the damage to the surface paint occurred in late 2016 or early 2017. Mot. at 2. First Mercury argues that because the Sluskys moved into the home in January 2012, the damage would have had to occur before January 2012 at the latest in order for TBI to be potentially insured. *Id.* at 19. TBI counters that factual questions exist as to whether the damage on the surface paint occurred prior to November 1, 2014, the last date of coverage of the First Mercury policies, and thus the Court should deny the motion.[9] TBI Opp'n at 2. Defendants Klein Plastering and Kinsale do not brief this issue, though Klein Plastering states in a footnote that it does not agree with First Mercury's arguments on this point. Klein Plastering Opp'n at 1 n.1.

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). "To prevail in an action seeking declaratory relief on the question of the duty to defend, 'the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within

---

began. However, First Mercury states in its motion that "none of the expert witnesses in the Underlying Arbitration provided testimony regarding when the corrosion underneath the stucco surface began." Mot. at 9.

[9] Throughout its opposition, TBI uses November 1, 2014, as the operative date when it states any potential coverage would have ended. When given the opportunity to clarify this position at the hearing, TBI did not do so. Counsel for TBI stated that TBI believes damage to the paint began during construction and while operations were ongoing, though counsel did not clarify whose operations it means, TBI's or Klein Plastering's.

13

policy coverage; the insurer must prove it cannot.'"  *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 308 (2009) (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993) ("*Montrose I*")).  "The duty to defend exists if the insurer 'becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.'"  *Id.* (citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995)).  "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor.  "The insurers have a heavy burden when seeking summary judgment on the duty to defend."  *Anthem Elecs.*, 302 F.3d at 1056.

The policy here was issued by First Mercury to Klein Plastering, and covered TBI as an additional insured, pursuant to the following provisions:

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

It is further agreed that such insurance is as afforded by this Policy for the benefits

14

of an additional insured shall be primary and non-contributory.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

. . .

    **2.** "Bodily injury" or "property damage" occurring after:

        **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

        **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Policy at 38.

First Mercury points to the policy language that states TBI's status as an additional insured ends when Klein Plastering's operations for TBI are completed. In opposition, TBI cites to the California Court of Appeal decision in *Pulte Home Corporation v. American Safety Indemnity Company*, 14 Cal. App. 5th 1086 (2017). However, the "additional insured" language in the *Pulte Home* policy differs materially from the language at issue here, and TBI conceded this at the hearing.

Regardless of the applicability of *Pulte Home*, First Mercury's motion fails for the reasons stated in Section II above because there is insufficient evidence in the record as to when the damage to the surface paint of the home first occurred. We know only that two witnesses observed the damage in early 2017 (or perhaps in late 2016), but it is the date that the damage *occurred*, not the date on which it was *discovered*, that controls. *See Montrose II*, 10 Cal. 4th at 675. First Mercury alternatively argues that by definition "the paint was obviously applied to the stucco *after* Klein Plastering installed the stucco[,]" but the present record does not support this

assertion. *See* Reply at 9. At this early stage of the litigation, there is no information before the Court about when and how the installation and painting of the stucco occurred. First Mercury has failed to meet its "heavy burden" on summary judgment, and accordingly its request for a declaration that it has no duty to defend or indemnify TBI is DENIED.[10] *See Anthem Elecs.*, 302 F.3d at 1056.

Kinsale has indicated that it intends to file its own motion for partial summary judgment following appropriate discovery. Kinsale Opp'n at 2-3. The Court's ruling today is without prejudice to defendants' moving for summary judgment in the future. Pursuant to the Court's Standing Order, if plaintiff First Mercury wishes to move for summary judgment again at a later date, it must first request leave of the Court. *See* Standing Order ¶ 5.

## CONCLUSION

First Mercury's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court GRANTS only that portion of the motion seeking a declaration that the damage to Klein Plastering's stucco work itself—but not the damage to the surface paint—is excluded under Exclusion *l*. The balance of the motion is DENIED.

**IT IS SO ORDERED**.

Dated: August 21, 2018

_Susan Illston_ _____
SUSAN ILLSTON
United States District Judge

---

[10] Although the duty to defend is broader than the duty to indemnify, *see Montrose I*, 6 Cal. 4th at 295, the Court does not separately analyze First Mercury's duty to indemnify TBI here, because the factual disputes that preclude granting First Mercury's motion on the duty to defend also preclude granting the motion on the duty to indemnify. Nor need the Court reach the question TBI raises of whether First Mercury owed a duty to defend TBI for the additional reason that the Underlying Action contained allegations that there was an "odor" in an upstairs bedroom after renovations.

United States District Court
Northern District of California